IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Thomas Mortensen,              ) | Civil Action No.  8:07-547-JFA-BHH |
|            Plaintiff,    ) | |
|         ) | **REPORT OF MAGISTRATE JUDGE** |
|        vs.            ) | |
|         ) | |
| Michael J. Astrue,         ) | |
| Commissioner of Social Security,   ) | |
|         ) | |
|           Defendant.   ) | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Thomas Mortensen, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 41 years old at the time of his alleged onset of disability on September 8, 2004.  The plaintiff has a high school education (R. at 65), and past relevant work experience as a retail clerk/stocker, general laborer, factory line worker, and sorter on a potato farm.  (R. at 61, 67.)

The plaintiff protectively filed applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI) in Michigan on January 28, 2005, alleging that he became disabled  due to herniated discs, pinched nerves in his left leg, and depression.

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

(R. at 60.)  The applications were denied initially.[2]   (R. at 28-33, 209-13.)  On June 1, 2006, the plaintiff (who had moved to South Carolina) returned to Michigan and appeared before an administrative law judge (ALJ) at a *de novo* hearing.  (R. at 237-64.)  On June 30, 2006, the ALJ issued an unfavorable decision.  (R. at 19-27.)  The Appeals Council denied the plaintiff's request for review, (R. at 6-8), thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

(1)    The claimant meets the insured status requirements of the Social Security Act through June 30, 2008..

(2)    The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 40401520(b), 404, 1571 *et seq*., 416.920(b) and 416.971 *et seq.*

(3)    The claimant has the following severe impairment: degenerative disc disease with pain radiating into the left lower extremity (20 CFR 404.1520(c) and 416.920(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

(5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of light work.  The claimant can lift up to ten pounds on a frequent basis and up to twenty pounds on an occasional basis.  He can each stand, walk, and sit up to six hours of an eight hour workday, but must be afforded an option to sit and stand at will.   He can occasionally use ramps or stairs, stoop[,] crouch, kneel, and crawl; and should never climb ladders, scaffolds, or ropes.

---

[2] In Michigan, at this time, disability applications were treated as "prototype" cases, testing modifications to the disability determination procedures.  The reconsideration stage was eliminated and the claimant could request a hearing directly after the initial determination.

(6)    The claimant is unable to perform any past relevant work (20 CFR 404,1565 and 416.965)

(7)    The claimant was born on August 13, 1963[,] and was 41 years old on the alleged disability onset date, which is defined as a younger individual 18-44 (20 CFR  404.1563 and 416.963).

(8)    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9)    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968)

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.860(c), and 416.66).

(11)    The claimant has not been under a "disability," as defined in the Social Security Act, from September 3, 2004[,] through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

3

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the

4

Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to give proper weight to the opinions of his treating physician; (2) failing to properly assess his subjective complaints of pain; and (3) relying on inconsistent and incomplete testimony of the vocational expert ("VE"). The Court will address each alleged error in turn.

### I.   TREATING PHYSICIAN

The plaintiff first contends that the ALJ failed to give the opinions of his treating neurologist, Dr. Darrell Cunningham, controlling authority.  In January 2005 Dr. Cunningham, stated that the plaintiff could occasionally lift 5 pounds; could stand and walk for 1 hour total per day, with a questionable amount of sitting; could grasp with both upper extremities, but not reach, push, pull or manipulate finely; and could not operate foot/leg controls. (R. at 179.) One year later, he further limited the plaintiff to no lifting, bending,

stooping, pushing, or pulling. (R. at 170.) The plaintiff contends that the ALJ improperly rejected these limitations, which were well supported.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 858, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d at 178 (*citing Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *See Blalock*, 483 F.2d at 775.

In this instance, the ALJ determined that the opinion of Dr. Cunningham was"not supported by clinical evidence" and inconsistent with other substantial evidence because (1) it was based on the plaintiff's subjective allegations of pain and not on objective findings and (2) it was inconsistent with the opinions of other physicians. (R. at 22-25.)

In regards to the basis for Dr. Cunningham's opinions, it is true that a doctor's observation of subjective complaints is not "clinical evidence" upon which a controlling

6

opinion of treating physician may be based. *Craig*, 76 F.3d at 590 n.2 ("If this were true, it would completely vitiate any notion of objective medical clinical medical evidence. There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain.'"); *see also Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005) (physician's opinion that was based on the claimant's subjective complaints could be rejected). The Court would agree that Dr. Cunningham's notes do reflect a fair amount of the plaintiff's own complaints. (See R. at 100-102, 160.)

The defendant argues that this consideration is compounded by the determination of the ALJ, discussed in greater detail *infra*, that the plaintiff is not fully credible as to his subjective allegations. (R. at 24.) Specifically, the defendant emphasizes that Dr. Cunningham expressed skepticism concerning the plaintiff's reports of "left lower extremity pain" stating that the plaintiff had offered "no real explanation of how [he] held up under the months of extreme pain in the left [leg] and what then took him to the ER the other day." (R. at 101). The ALJ specifically noted Dr. Cunningham's skepticism in his decision: "The doctor was rather perplexed, having the impression that the claimant had been in extreme pain for months, yet had not sought treatment for the pain until several days earlier." (R. at 24.)

This argument, however, does not tell the whole story. Dr. Cunningham did express skepticism over the plaintiff's complaints but ordered an MRI. (R. at 101.) Notwithstanding his decision to order the MRI, he stated, "I have been wrong before but I doubt that the MRI in this case is going to show any abnormality." *Id*. It is undisputed, however, that the MRI, on October 24, 2004, did in fact evidence findings "consistent with degenerative disease." *Id*. at 103. The MRI showed disc herniation at L5/S1, which abutted and displaced the existing nerve root, a small herniation at L4/L5 with foramenal stenosis, and foramenal stenosis bilaterally at L3/L4 secondary to a broad based disc bulge—2 disc herniations with accompanying stenosis at 3 levels. (R. at 100, 103, 161.)

7

As a result of the MRI, Dr. Cunningham referred the plaintiff to an orthopedic surgeon, prescribed Darvocet, and gave him Motrin. (R. at 100.)

After the MRI, in March 2005, the plaintiff saw Dr. Cunningham for a follow-up. Dr. Cunningham expressly modified his assessment of the plaintiff's credibility in light of the MRI:

> Initially he seemed so nonchalant about [his lumbar pain] that **I really doubted whether he had true disc problems, however**, we obtained an MRI in 10-2004 and it showed disc herniation L5/L6 which abuts the nerve root, and then a central hernation at L4/L5 with a moderate foramenal stenosis and then degenerative disease in general of the lumbars**, so he certainly has cause for reports of discomfort**.

(R. at 160 (emphasis added).)

Dr. Cunningham noted other objective clinical findings as well. He found a positive straight leg raising on the left, equivocal on the right, and observed that the plaintiff changed positions carefully and gently. (R. at 100.) Specifically, he stated that the plaintiff would go "from a standing to a sitting [position], a sitting to supine, and then reverse." *Id*. In July 2005, a lumbar spine x-ray showed evidence of minimal disc space narrowing corresponding to degenerative disc disease involving the L4-L5 and L5- S1 levels. (R. at 136.)

In January 2006, Dr. Cunningham stated that the plaintiff had "pretty significant disc disease in the low back." (R. at 157.) He observed that the plaintiff's "Straight Leg Raising was painful even at minor angles from off of the neutral." *Id*. Every one of Dr. Cunningham's treatment notes beginning in June 2004 through January 2006 documents his left-sided low-back-to-leg pain. (R. at 100-02, 156-65.)

Notwithstanding, the ALJ concluded that Dr. Cunningham's medical records do not "reflect profound clinical anomalies, and certainly none that would prevent the claimant from all lifting, bending, stooping, pushing or pulling." (R. at 22.) This conclusion is an impermissible interpretation of the medical evidence.

8

"An ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so."  *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007).  As a lay person, an ALJ is "simply not qualified to interpret raw medical data ***in functional terms*** . . . ."  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (emphasis added); *see also Manso-Pizarro v. Sec'y of Health & Human Services*, 76 F.3d 15, 17 (1st Cir.1996) (stating that "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record"); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence."); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.1982) ("Because an Administrative Law Judge as a rule is not a doctor, he should avoid commenting on the meaning of a test or clinical x-ray when there has been no supporting expert testimony.").  Thus, whether or not the anomalies evidenced by the medical record were sufficiently "profound" (R. at 22) to prevent the claimant from "all lifting, bending, stooping, pushing or pulling" was a medical and functional inquiry that the ALJ was not equipped to make on his own accord.  Dr. Cunningham relied on a variety of objective observations and test results and made a functional assessment based, in part, on those observations.  The ALJ may not reject the conclusions of the treating physician simply because he views those same observations and test results as not very "profound."  *Id*.

The ALJ, however, may find that the a treating physician's opinion is inconsistent with other substantial evidence of record.  In this case, it appears the ALJ so concluded. Specifically, he found that a Dr. Farook J. Kidwai's opinion was "more consistent with the record as a whole."  (R. at 22.)  Dr. Cunningham referred the plaintiff to Dr. Kidwai, a neurological specialist.  Dr. Kidwai diagnosed lumbar spondylosis with discogenic pain and early radiculopathy. (R. at 131.)  He stated, "Provocative tests for apophyseal arthritis or irritation were positive. Straight leg raising at degrees on the left will increase pain in the low back and left leg." *Id*. Dr. Kidwai found that the plaintiff had mild sensory deficits along the

L4-5 distribution on the left with moderate paraspinal spasm and some restriction of mobility. *Id*. Dr. Kidwai concluded:

> As far as his work status is concerned, I advised him to take it easy and avoid all activities that aggravate his symptoms. In particular, he should avoid repetitive bending and twisting of his low back. He should refrain from prolonged sitting, standing, walking, stooping, or driving for more than ½ hour at a time. After each such period of activity, he should either change his pace, or better yet, take a few minutes' break if at all possible. He should also not lift more than 20 pounds at a time.

(R. at 132.) He further cautioned the plaintiff to avoid frequent bending of the neck and/or shoulder girdle, and not to keep a prolonged flexed posture of the neck. (R. at 133.) As a specialist, whose opinion Dr. Cunningham specifically solicited, Dr. Kidwai's conclusions would indeed constitute a basis to diminish Dr. Cunningham's opinion if it were, in fact, inconsistent. The Court, however, concludes that it is not.

The only element of Dr. Kidwai's assessment which appears inconsistent, on its face, with Dr. Cunningham's opinion, is the conclusion that the plaintiff should lift no more than 20 pounds at a time. Dr. Cunningham had recommended no more than 5 pounds at a time. (R. at 179.) The ability to lift 20 pounds at a time would possibly mean that the plaintiff was capable of performing "light work" so long as he could also lift 10 pounds frequently. *See* 20 C.F.R. § 404.1567(b). Dr. Cunningham's opinion would indicate that the plaintiff was not capable of light work.

Otherwise, the Court is unsure in what ways the ALJ found Dr. Kidwai's opinion either inconsistent with Dr. Cunningham's or, as the ALJ claimed, more consistent with the record as a whole. Neither the ALJ nor the defendant have attempted to explain it. Not only did the ALJ fail to explain what he perceived as inconsistent between the opinions, the plaintiff rightly points out that the ALJ did not seem to substantially incorporate the

10

limitations proposed by Dr. Kidwai into his hypothetical to the ALJ.[3]  (See R. at 261-62.)
Namely, the hypothetical did not reflect the strong recommendation for frequent breaks.

It does not appear that a remand, however, would serve any useful purpose, as the
Court believes that no colorable explanation could be made that the two opinions are
materially inconsistent.  In accord with Dr. Cunningham, Dr. Kidwai recognized substantial
limitations in the plaintiff's ability to bend, twist, sit, stand, and stoop.  (See R. at 132.)  Dr.
Kidwai found that the plaintiff would need to frequently adjust how he performed each such
activity and that it was advisable for him to actually take breaks every thirty minutes.  The
Court simply does not find that Dr. Kidwai's opinion was substantial evidence upon which
to diminish the weight given Dr. Cunningham's opinion.  Or said differently, it is substantial
evidence but it only tends to reinforce Dr. Cunningham's opinion.

As stated, however, the ALJ also discounted Dr. Cunningham's assessment based
on the fact that he believed it was largely a product of the plaintiff's subjective complaints,
which the ALJ found not fully credible.  While the ALJ would be permitted to discount a
treating physician's opinion that was based substantially on subjective complaints, such is
not the case here.  As the Court has discussed, Dr. Cunningham's opinion was based on
various objective findings, which were not doubted by the ALJ.  The Court, therefore,
concludes that Dr. Cunningham had objective and clinical bases for his opinion separate
from any subjective complaints.  In fact, as the defendant emphasizes, it is fairly clear from
the record that Dr. Cunningham would not have made the same functional assessment *but
for* the objective medical findings.  As noted, he was highly suspicious of the plaintiff's
subjective complaints until the objective medical evidence corroborated them.  To find that
Dr. Cunningham's opinion is simply a puppet of the plaintiff's subjective complaints is to
grossly misconstrue his stated reasons for so opining.

---

[3]  That hypothetical read as follows: "I have an individual who could meet the demands
of light work, who should never use ladders, scaffolds or ropes, should only occassionaly
use ramps or stairs, stoop, kneel, crouch or crawl. " (R. at 261.)  The ALJ later added the
limitation of a sit/stand option, at will.  (R. at 261-62.)

The Court will discuss the ALJ's consideration of the plaintiff's credibility more fully below. But, to whatever extent the ALJ was justified in finding him not fully credible for his own decision, the Court does not believe it is relevant to an analysis of the weight accorded to the treating physician. As stated, Dr. Cunningham was cautious concerning the subjective evidence before him and was principally compelled by the objective findings which gave credence to the plaintiff's claims. Accordingly, concerns over the plaintiff's credibility in this case are not a substantial basis for the ALJ to reject Dr. Cunningham's opinion.

Because Dr. Cunningham's opinion, therefore, was well-supported and not inconsistent with other substantial evidence, it should be treated as controlling.

## II.    The Plaintiff's Credibility

The plaintiff next contends that the ALJ failed to properly assess the credibility of his subjective complaints of pain. As an initial matter, federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id.* at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ." *Id*. at 593.   Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating  lense because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

The plaintiff does not make any argument that the ALJ failed to employ the proper analytical framework. The ALJ did, in fact, analyze the plaintiff's subjective complaints of pain in accordance with the two step process described above. (R. at 24.)  The ALJ first determined that the plaintiff suffered from an impairment capable of producing some of the pain alleged but then concluded that the intensity, persistence and functionally limiting effects of such pain was not fully consistent with the plaintiff's own representations. *Id*. at 24.  The ALJ outlined three reasons for discounting the plaintiff's credibility.  The Court will address each in turn.

First, the ALJ found that the plaintiff sought only sporadic treatment for his pain.  This is normally a relevant consideration.  The regulations specifically provide that in evaluating the intensity and extent of pain, consideration must be given to the medication and medical treatment a claimant receives to alleviate her symptoms as well as any other measures or "home remedies" a claimant uses to relieve her symptoms.   *See* 20 C.F.R. § 416.929(c)(3)(iv)-(vi); *see also* SSR 90-1p at 4.  While a claimant's failure to obtain medical treatment that he cannot afford cannot justify an inference that her condition was not as serious as he alleges, *see Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir.1986), an unexplained inconsistency between the claimant's characterization of the severity of his condition and the treatment he sought to alleviate that condition is highly probative of the claimant's credibility. *See* 20 C.F.R. § 416.929(c)(4); *Mickles v. Shalala*, 29 F.3d 918, 930

(4th Cir. 1994) (finding that ALJ did not err by considering inconsistency between the claimant's level of treatment and her claims of disabling symptoms); *Murphy v. Sullivan*, 1994 WL 677656, at * 1-2 (4th Cir. December 05, 1994) (finding medication effective).

The Court, however, does not believe that substantial evidence existed for the ALJ to conclude that the plaintiff was not seeking treatment at intervals consistent with the pain alleged. The ALJ appears to have emphasized a four-month time period between a visit with Dr. Cunningham in June 2004 and a follow-up in October 2004, as evidence that the plaintiff's symptoms were well-managed during that interval. (R. at 24.) He apparently thought the point was so compelling that it warranted mentioning twice in the decision. *Id*. The ALJ's interpretation of the record in this regard, though, is curious at best.

As an initial matter, the plaintiff does not even contend that his disability arose until September 8, 2004, three months into the alleged four-month interval. (R. at 61.) Second, the ALJ expressly notes that at a hospital visit on October 9, 2004, the plaintiff indicated that he had been experiencing "**sporadic** left hip and left lower extremity pain for the past three months" **but** that "**the pain had developed into continual pain at the time of his visit**." (R. at 24.) The plaintiff, therefore, has never at any point represented, either to the hospital, the ALJ, or this Court, that he was in disabling pain for over a four-month period but simply elected not to seek treatment. To the contrary, his position has been consistent that his pain intensified over that period of time until, in his estimation, it became disabling in September, and he was compelled to go to the hospital at the beginning of October. At most, the interval is a month (between September 8 and October 9) but even that period of time is explained in the plaintiff's representation to the hospital that the pain had further intensified until it was continuous at the time of the visit, on October 9. *See id.*

The ALJ cites all of this detail specifically in his decision and yet characterizes it somehow as evidence of inconsistency between the treatment sought and the pain alleged. (See R. at 24.) To reinforce that characterization, the ALJ cites the skepticism of Dr. Cunningham discussed previously. *Id*. But as stated, Dr. Cunningham reneged his doubts

14

after an MRI revealed objective conditions consistent with the pain alleged.  The ALJ's reading of this evidence is unjustifiably forced and not based on substantial evidence.  In the same way, the ALJ overemphasizes an interval between a doctor's visit on January 12, 2005 and March 7, 2005, not even two months in duration.

The Court simply is unaware, in light of the explanation of the plaintiff and the rather brief time between visits, how these intervals could be probative of overexaggeration by the plaintiff as to his pain.  It is not an instance where the plaintiff permitted years to elapse between visits.  He sought available treatment.  *See Mickles*, 29 F.3d at 930. And, the schedule of his treatment was consistent with what Dr. Cunningham estimated - 1 visit per quarter.  (See R. at 169-70.)

Next, the ALJ questioned the plaintiff's credibility based on what he characterized as inconsistencies between the plaintiff's various representations as to the effectiveness of pain medications.  Whether or not medications are effective in managing pain is a relevant consideration.  *See Murphy v. Sullivan*, 1994 WL 677656, at * 1-2 (4th Cir. December 05, 1994) (finding medication effective).  The ALJ cites the following examples.  First, the ALJ claims that the plaintiff inconsistently reported to Dr. Cunningham that the Morphine shot administered at the hospital on October 9, 2004, only helped "somewhat."  (R. at 24, 101.) The ALJ claims that this representation is inconsistent with medical records from the hospital which indicate that the plaintiff's pain on a scale of 0 to 10 was a 0, when he was discharged from the hospital. (R. at 24.)  Again, the ALJ has not detailed the entire account. The plaintiff told Dr. Cunningham that the Morphine helped somewhat but "just didn't last very long." (R. at 101.)  This statement is not inconsistent with evidence that his pain might have been fully managed at the time he left the hospital. (R. at 24.)  It is entirely too speculative on the part of the ALJ to make any assumptions about the how long the Morphine helped the plaintiff.  The plaintiff said, "not very long," and that representation is undisputed.

15

The ALJ next stated that the plaintiff inconsistently claimed, on October 28, 2004, that Bextra had helped a "great deal," at that time, but then on March 7, 2005, stated that it was only helping "somewhat."  (R. at 24, 160, 162.)  Again, to cite such an example as evidence of untruthfulness is almost to appear anxious to identify some reason not to believe the plaintiff.  There are any number of bases upon which to reconcile the two statements, the simplest explanation being that a medication that was once effective had ceased to be so either for a worsening of the plaintiff's condition or a lessening of the bodies responsiveness to it.  No matter, the ALJ may not simply and summarily conclude that the two claims regarding the varying effectiveness of Bextra are mutually exclusive and, therefore, that the plaintiff must be incredible in regards to either one or the other.  The Court rejects that the two representations constitute substantial evidence to conclude that the plaintiff's account of his pain, as to intensity and severity, should not be believed.

The ALJ and the defendant have outlined numerous other allegedly inconsistent accounts of pain and the effectiveness of medication and therapy. [See, e.g., R. at 24-25, 94A (left hospital in improved condition after morphine treatment), 95 (treatment notes showed pain decreased on Toradol and Robaxin), 100 (the plaintiff stated that Bextra helped "a great deal"), 101 (the plaintiff stated that neither Toradol nor Robaxin helped), 119 (the plaintiff stated that medications prescribed by Dr. Cunningham did not help), 183-84 (the plaintiff stated he felt better and/or had less pain after several physical therapy sessions), 142 (the plaintiff reported marked improvement after sacroiliac block injection), 143 (the plaintiff reported no relief from physical therapy), 145 (the plaintiff stated that "[n]othing to date" had relieved his pain), 247-48 (the plaintiff testified that medication helped somewhat and physical therapy did not help much at all).]  The Court has reviewed each of the alleged inconsistencies and finds that the way in which the defendant and the ALJ would characterize them is simply not a representation fairly rooted in substantial evidence.  Overall, the record evidences not a pattern of inconsistencies on the part of the plaintiff but rather a range of representations as to the limited effectiveness of certain

16

medications and therapy at particular points in time.  The defendant and the ALJ have suggested that a representation on one day that a particular medication is "somewhat" effective (R. at 247) is necessarily inconsistent with a representation on another that "nothing to date" has relieved the plaintiff's pain (R. at 145).  But a reasonable rendering of the latter statement is that the plaintiff is simply indicating, consistent with the record, that regardless of temporary and partial relief by certain medications and procedures, relief has not been sustained.  In fact, Dr. Kidwai himself concluded that the plaintiff was an "extremely poor candidate" for surgery and stated, "I doubt very much if any one single procedure will make him totally symptom—or deficit—free."  (R. at 130-32.)

The Court is not re-weighing the evidence by so concluding.  Rather, the Court will not permit the plaintiff's testimony to be construed so narrowly as to not account for the way in which people commonly speak, particularly about health issues which can vary so markedly from day to day.  Perfect harmony cannot possibly be the standard by which the plaintiff's credibility is measured.

The plaintiff testified at the hearing that "taking medication" has "helped some."  ( R. at 247.)    And as the ALJ and defendant have pointed out, the plaintiff has regularly indicated that medications and therapy have given some temporary relief.  That admission, however, does not disqualify him from arriving at the more general and similarly consistent conclusion that nothing has really ever resolved and managed his pain for an extended period of time.  There is not substantial evidence to conclude differently.

In the same way, the ALJ has overstated alleged discrepancies in the plaintiff's representations concerning household chores.  The ALJ indicates that the plaintiff told Dr. Kidwai that he "could not do any household chores due to his pain."  (R. at 25.)  The ALJ then suggests that the plaintiff told Dr. Jones and the Hospital that he could, in fact, do light housework.  *Id*.  The plaintiff, however, did not tell Kidwai that he could not *"do* any" chores.  Rather, he told Dr. Kidwai that he could not "*maintain* any chores."  (R. at 130.)  The

17

difference between "do" and "maintain" is material and does not reflect any inconsistency with a later claim that he could do some light chore work.

For all these reasons, the Court finds that the ALJ did not have substantial evidence to find the plaintiff less than fully credible.   That conclusion is essentially dispositive of the case.  The ALJ specifically asked the vocational expert ("VE") whether there were any jobs in the economy which the plaintiff could perform considering his functional limitations, if the plaintiff's subjective complaints of pain were credible.  (R. at 262.)  The VE indicated that there were none.  *Id*.  Accordingly, even assuming that the ALJ's consideration of Dr. Cunningham's treating physician opinion was not in error, the plaintiff's credible subjective complaints of pain in conjunction with the RFC ascribed by the ALJ would be sufficient to find him disabled. (R. at 21-22 (RFC), 26261-62 (hypothetical and answer).)  The defendant has not identified any evidence upon which the ALJ could find the plaintiff not credible.

## III.   Vocational Expert

Finally, the plaintiff contends that the ALJ failed to clarify the VE's testimony concerning jobs which he believed the plaintiff could perform.  The VE testified that the plaintiff could perform work as a cashier, interviewer, information clerk, shipping clerk, and hand packager.  (R. at 261.)  The plaintiff argues, however, that of the jobs identified by the VE only the unskilled light cashier position and two of the thirteen interviewer positions accommodate the plaintiff's RFC because the other jobs are either semi-skilled or require a medium level of work.  The plaintiff contends that there is no evidence that the plaintiff can perform semi-skilled work and the ALJ limited him to light work.

The plaintiff further argues that the VE failed to provide testimony that the unskilled light cashier position and the two interviewer positions exist in significant numbers in the national economy.  Specifically, it is undisputed that the VE cited the number of those jobs

in Michigan, which the plaintiff urges is no basis to conclude that they exist in the same numbers in South Carolina where the plaintiff actually lived at the time of the hearing.[4]

Assuming, without deciding, that the plaintiff can perform only unskilled light work as the plaintiff contends, the error in regards to the incidence of the interviewer and cashier positions is harmless.  *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain, because "he would have reached the same result notwithstanding his initial error").  It appears that it was permissible for the ALJ to infer that jobs like interviewer and cashier, which are not limited to few locations, exist in significant numbers in the region where a person lives, if they exist in significant numbers in other regions.  *See* 20 C.F.R. §§ 404.1566(a) ("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country."), 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.'").  The plaintiff has not produced any evidence or argument that the positions, which he concedes he is capable of performing, do not, in fact, exist in significant numbers within South Carolina.  The error, if any, therefore, was harmless.

## IV.    Award of Benefits

The Court faces the question whether to remand or reverse the decision of the Commissioner.  Certainly, an award of benefits is more appropriate when further proceedings would not serve any useful purpose.  *See  Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987)*; Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1985).  Likewise, an award of benefits is appropriate when substantial evidence on the record as a whole

---

[4]  The plaintiff lived in Michigan up until a short time before the hearing when he moved to South Carolina.

19

indicates that the claimant is disabled, and the weight of the evidence indicates that a remand would only delay the receipt of benefits while serving no useful purpose, or a substantial amount of time has already been consumed. *See Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir. 1984); *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir. 1982).

As discussed, based on the RFC identified by the ALJ and the VE's testimony, it seems to the Court that no useful purpose would be served by a remand. Where no useful purpose would be served by a remand and, in fact, justice would not be served by such an outcome, outright reversal is justified. *Coffman*, 829 F.2d at 519. The facts of this case justify such a reversal. The opinion of the treating physician constitutes substantial evidence to conclude that the plaintiff is disabled. Even if it were rejected, the plaintiff's credible allegations of pain in conjunction with the RFC detailed by the ALJ require a determination of disability. (See R. at 261.) The plaintiff, therefore, is entitled to the benefits he seeks.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this Court concludes that the ALJ's findings are not supported by substantial evidence and that substantial evidence demonstrates that the plaintiff is disabled. Accordingly, this Court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §§405(g) and 1383(c)(3) and that the case be remanded to take appropriate action regarding an award of DIB benefits to the plaintiff based on the disability alleged to have commenced on September 8, 2004.

IT IS SO RECOMMENDED.

s/BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

April 3, 2008
Greenville, South Carolina

20